## WEAVER v LIBERTY CABS, INC

Ohio Appeals, 2nd Dist, Montgomery Co

No 1367.  Decided May 9, 1936

Marshall & Harlan, Dayton, for plaintiff in error.

Estabrook, Finn & McKee, Dayton, for defendant in error.

**OPINION**

By HORNBECK, J.

The specifications of negligence set out in the amended petition were violations of §307 of the Traffic Ordinance of the City of Dayton, Ohio, and §12603-1 GC; violation of §235 of Subdivision (c) of the Traffic Ordinance of the City of Dayton; failure to keep the taxicab under control, to maintain the proper lookout and to sound a warning of the approach of the taxicab; failure to check speed of the automobile after the position of plaintiff was in view of the driver of the car; and failure to slacken speed or divert the movement of the automobile; failure to keep headlights on the automobile of defendant burning and lighted so as to make vehicles, persons and substantial objects on Broadway at the south cross-walk thereof visible to the defendant's driver within a distance of at least 200 feet straight ahead in violation of §6310-1 GC and §292 of the Traffic Ordinance of the City of Dayton. §307 of the Traffic Ordinance of the City of Dayton, Ohio, is in form substantially as is found in §12603-1, GC and §12603-1 GC provides:

"Whoever operates a motor vehicle on the public roads or highways without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles, and so as to endanger the life, limb or property, of any persons while in the lawful use of the roads or highways shall be deemed guilty of misdemeanor."

Sec 12603 GC provides:

"No person shall operate a motor vehicle in and upon the public roads and highways at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface and width of the road or highway and of any other conditions then existing, and no person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."

Then follow the speeds at which it shall be prima facie lawful or unlawful for the operator of a motor vehicle to drive the same. The amended answer was substantially a general denial except that it was specifically averred that the defendant had the right of way by reason of §235 of the Traffic Ordinance of the City of Dayton, and particularly sections a and c thereof. The reply was a denial of the new matter averred in the answer. Upon the issues thus drawn the cause came on for trial to court and jury resulting in a verdict for the defendant upon which, after motion for new trial was filed, judgment was entered.

There are five claims of error assigned in the brief of plaintiff which we consider in order.

(1) Error of the court in refusing to give to the jury at the request of plaintiff below special charges 5 and 6 before the arguments. Special charge No. 5 reads:

"If on the night the forward lights on defendant's car did not enable the driver to see plaintiff until he was within three to six feet of striking distance, then since the driver was bound to anticipate the presence of the plaintiff on this crossing, he must drive at such speed as will enable him to stop when he does see the pedestrian. Failure to do so is negligence per se."

Special charge No. 6 reads:

"A pedestrian on a proper crossing is entitled to rely on warning from approaching vehicles."

We think the proposition, "then since the driver was bound to anticipate the presence of the plaintiff on this crossing", as found in special charge No. 5 enjoined a stricter obligation upon the defendant's driver than the law demands. Whether or not the driver was bound to anticipate the presence of the plaintiff on the crossing depends upon his exercise of due care to determine whether or not there was a pedestrian moving along the cross-walk as the car approached said walk and he was bound to know that pedestrians might be moving across the street on that walk.

The same observation pertains to special charge No. 6. Whether or not a pedestrian on a cross-walk is entitled to rely exclusively on his warning from approaching vehicles is a question of fact. He may or may not meet the demand of ordinary care in depending entirely upon an approaching automobilist to warn him (the pedestrian) of its approach. Ordinary care may require in a given situation something other or further to be done by the pedestrian. ·

(2) Error of the court in its general charge to the jury. It appears that the court in instructing the jury as to the obligation of proof devolving upon the plaintiff touching its claims of negligence against the defendant, said that the burden rested upon the plaintiff to prove the negligence of defendant in "some of the respects" alleged instead of some one or more of the particulars of negligence asserted. We doubt if the language employed by the court was misleading or that it would have caused the jury to conclude that the court meant that there must be more than one of the specifications of negligence proven by the plaintiff in order that she recover.

The court in its general charge also said to the jury:

"The court instructs the jury it was the duty of the defendant to drive his automobile at such a speed as would enable him to bring it to a stop within that distance which a person of reasonable prudence and ordinary care would determine to be clear for the purpose of his traffic. It does not require that he should anticipate an unlawful occupation of his path, but it does require that he should have his car under such control as to avoid striking any object discernable to a man in the exercise of reasonable care."

There is much to commend the language of the trial court as a practical interpretation of §12603 GC, but since the decision of the Supreme Court in Skinner v The Pennsylvania R. R. Co., 127 Oh St, 69, the statute has been given technical and literal interpretation, and the charge was, therefore, erroneous. The Supreme Court has re-stated its interpretation of the statute in Gumley, Admr. v Cowman, 129 Oh St, 36.

(3) Error of the court in submitting to the jury on request of defendant interrogatories 1 to 7, inclusive. The section, §11463, GC relating to the submission of special interrogatories to the jury provides in part:

"When either party requests it, the court shall instruct the jurors if they render a general verdict, specially to find upon particular questions of fact, * * *."

It seems that no one of the interrogatories carried in connection with the request to submit it to the jury the language of the statute "in case a general verdict shall be rendered," and it is asserted that the submission of the interrogatories without this language of the statute is prejudicial error. We are cited to McDowell v Rockey, 32 Oh Ap, 26, where it was held that it was not prejudicially erroneous for the court to refuse to submit special findings under §11463 GC, when the request did not contain the condition that the questions should be answered in case a general verdict be returned. The question presented here is the converse of that found in McDowell v Rockey. Inasmuch as there was a general verdict returned in this case and it does not appear that any objection was made upon the ground now asserted to the submission of the interrogatories or exception noted to the action of the court in submitting them, we find no abuse of discretion on the part of the court in causing the jury to consider the interrogatories. The purpose of the statute was clearly effectuated in the instant case. A general verdict was returned and in that situation it is contemplated that either party may have the right to answer to special interrogatories which shall be submitted by the court to the jury.

(4) Error in the admission of evidence. A mechanic in the employ of the defendant company was permitted to testify that a general check was made of the car involved in the accident during the day of February 14, 1934; that the check consisted of observation of brakes, lights, horn, wind shield wipers and mechanical condition of the car throughout. The witness was permitted to describe the type of lights on defendant's car, the kind and power of bulbs carried in the headlights, and that the

headlights as determined from tests in the shop would throw a light in darkness ahead a distance of about 175 feet. Under objections the court said. "He may testify as to the tests he conducted, and it will be for the jury to take that along with the other evidence and determine it." It is obvious that the test of the lights was made under normal conditions. The general rule is that such evidence is admissible only when conditions under which the tests are made are the same as existing at the time of the accident. Ry. Co. v Fouts, 88 Oh St, 305. On direct and cross-examination it was made plain to the jury that the evidence was admitted only as it might be helpful as it would reflect upon the charge that the headlights on the defendant's car on the night of the accident did not comply with the law as to the distance which the beams would be projected ahead. There was no error in admitting the testimony with the qualifications appearing in the record.

It is claimed that Paul M. Banker, president of the Liberty Cab Company, was permitted to testify that though the driver was laid off immediately after the accident, after investigation he was permitted to come back to work and it is asserted that this action of the trial court was prejudicially erroneous. We have examined the record at pages 114 and 115 and find that after the witness had testified that the driver had been cut off from his employment immediately after the accident certain questions were propounded to the witness touching an investigation that was made of the accident to which objection was made; then was put this question:

"Q. Did he come back to work?
A. No, he said he didn't feel like working for a week or so. He was very nervous and would like to be left off for a couple of weeks.
Q. When he was ready to come back to work, did you put him on again?
A. Yes, sir."

No objection was interposed to either of the last two questions propounded, nor do we find any objection to any question of the same import as the questions heretofore quoted. In our judgment the error, if any, is not reached because timely objections were not made and exceptions saved.

The 5th claim of error is that the verdict in this case is against and contrary to the weight of the evidence and the law of the case. An examination of the record does not in our judgment require us to say that the verdict of the jury is so manifestly against the weight of the evidence as to require its reversal. There is ample evidence in the record to support the claim of negligence against the defendant. In fact, if the case rested entirely upon this one question, we would be compelled to say that the negligence of the defendant conclusively appears. On the other hand, there is in this case the question of the contributory negligence of the plaintiff, and there is an issue on that proposition raised not only by the pleadings but by the facts developed. The right to resolve this issue in favor of the defendant was within the province of the jury. Its conclusion is not so manifestly against the weight of the evidence as to require us to say that it was clearly improper.

We have heretofore indicated that the court erred in its general charge to the jury respecting the application of §12603 GC to the facts. Our next question is to determine whether or not this error was substantial. The error as found relates only to the charge of negligence on the part of the defendant. We find no error in the presentation of the cause to the jury on the question of the contributory negligence of the plaintiff. The jury returned a general verdict and answered certain interrogatories submitted by the defendant:

"Interrogatory No. 1. Did the plaintiff see the automobile driven by the defendant in time to stop, in the exercise of ordinary care, so as to avoid a collision with said automobile?"
Answer: "No."

"Interrogatory No. 2: If your answer to Interrogatory No. 1 is 'No' did anything prevent the plaintiff, in the exercise of ordinary care, from seeing the automobile driven by the defendant in time to stop, so as to avoid a collision with said automobile?"
Answer: "No."

This last answer is in accord with and in support of the verdict of the jury upon the theory that it found that the plaintiff was contributorily negligent. In this situation we are satisfied that the two-issue rule has application. That the rule applies in a negligence case involving the issue of negligence and contributory negligence where there is a verdict for the defendant, and there is no error with respect to the submission of one of the issues, is

568

expressly held in **Knisely v Traction Company, 125 Oh St 131.**

Were it not for the testimony of the two passengers in the cab on the night of the accident, to the effect that the driver at the time of the collision with the plaintiff and at all times while moving south on Broadway was well over on his right side of the road, we would in probability reverse this cause as being against the manifest weight of the evidence. If these witnesses were correct in their statements, and the jury had a right to believe them, there would, clearly, be presented a question for the jury, not only on the negligence of the defendant, but also, further, touching the contributory negligence of the plaintiff.

Finding no prejudicial error in any of the particulars asserted by plaintiff, the judgment will be affirmed.

BARNES, PJ, and BODEY, J, concur.